IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
FAYETTEVILLE DIVISION

NORTHPORT HEALTH SERVICES
OF ARKANSAS, LLC d/b/a SPRINGDALE
HEALTH AND REHABILITATION
CENTER; NWA NURSING CENTER,
LLC d/b/a THE MAPLES, et al.                                                PLAINTIFFS

V.                          CASE NO. 5:19-CV-5168

UNITED STATES DEPARTMENT OF HEALTH
AND HUMAN SERVICES; ALEX M. AZAR II,
in his official capacity as Secretary of the
United States Department of Health and Human
Services; CENTERS FOR MEDICARE & MEDICAID
SERVICES; SEEMA VERMA, in her official
capacity as the Administrator of the Centers
for Medicare & Medicaid Services                                            DEFENDANTS

## MEMORANDUM OPINION AND ORDER

Plaintiffs have moved for a stay of the Court's judgment pending appeal. The Motion to Stay (Doc. 49) is fully briefed and ripe for decision.[1] For the reasons discussed below, the Motion is **GRANTED IN PART AND DENIED IN PART**.

## I. BACKGROUND

Plaintiffs in this case, nursing homes that are dually certified with Medicaid and Medicare, challenged the validity of a new regulation promulgated by the Centers for Medicare & Medicaid Services ("CMS") placing conditions on the use of arbitration agreements between facilities and their residents. *See* 42 C.F.R. § 483.70(n). On April 7, 2020, the Court granted summary judgment for the Government, upholding the agency's

---

[1] Plaintiffs filed a Memorandum Brief in Support (Doc. 50). The Government filed a Response in Opposition (Doc. 52), and Plaintiffs were granted leave to file a Reply (Doc. 56). The Court also heard oral argument on the Motion via telephone on April 23, 2020.

1

Final Rule, and entered judgment, dismissing the case with prejudice. (Docs. 44 & 45). Plaintiffs appealed.

Previously, the Government agreed to stay enforcement of the Final Rule as to Plaintiffs until April 17, 2020. (Doc. 43). On the day that voluntary stay expired, Plaintiffs filed the instant Motion to Stay Pending Appeal. (Doc. 49). At a hearing on the Motion, the Government agreed to an additional voluntary stay of two weeks, until May 7, 2020, to allow for the resolution of the Motion. Plaintiffs seek a further stay of enforcement of the Court's judgment while their appeal is pending before the Eighth Circuit, or in the alternative, until the disruptions caused by the COVID-19 pandemic have subsided. In their Reply brief, Plaintiffs ask that at the very least, the Court grant them time to seek a stay from the Eighth Circuit.

## II. LEGAL STANDARD

The Court must consider the following four factors when determining whether to grant a motion for a stay pending appeal: (1) the likelihood of the movant's success on the merits; (2) whether the movant will be irreparably harmed absent a stay; (3) whether issuance of the stay will substantially injure the non-moving party; and (4) the public interest. *Hilton v. Braunskill*, 481 U.S. 770, 776 (1987); *Shrink Mo. Gov't PAC v. Adams*, 151 F.3d 763, 764 (8th Cir. 1998). When the Government is the opposing party, the last two factors are merged. *Nken v. Holder*, 556 U.S. 418, 435 (2009).

The Eighth Circuit directs that the Court "must consider the relative strength" of the relevant factors. *Brady v. Nat'l Football League*, 640 F.3d 785, 789 (8th Cir. 2011). While the "most important factor is the [movant's] likelihood of success on the merits," it is appropriate to "consider the relative strength of the four factors, balancing them all" such

2

that "'[c]lear evidence of irreparable injury should result in a less stringent requirement of certainty of victory,'" and vice versa. *Id.* (quoting Developments in the Law, *Injunctions*, 78 Harv. L. Rev. 994, 1056 (1965)).

"A stay is not a matter of right, even if irreparable injury might otherwise result. It is instead an exercise of judicial discretion, and the propriety of its issue is dependent upon the circumstances of the particular case." *Nken*, 556 U.S. at 433 (quoting *Virginian Ry. Co. v. United States*, 272 U.S. 658, 672–73 (1926)) (cleaned up). "The party requesting a stay bears the burden of showing that the circumstances justify an exercise of that discretion." *Id.* at 433–34. *See also James River Flood Control Ass'n v. Watt*, 680 F.2d 543, 544 (8th Cir. 1982) (per curiam).

### III. DISCUSSION

#### A. Likelihood of Success on the Merits

Plaintiffs assert that a stay pending appeal is appropriate because the appeal will raise substantial and difficult legal questions. Plaintiffs point to the fact that a district court in the Northern District of Mississippi granted a preliminary injunction against a previous version of CMS's rule. *See Am. Health Care Ass'n v. Burwell*, 217 F. Supp. 3d 921 (N.D. Miss. 2016). According to Plaintiffs, the fact that the *Burwell* court reached a different conclusion as to whether a rule regulating arbitration in nursing homes conflicts with the Federal Arbitration Act (FAA) should be sufficient to merit a stay pending appeal. Plaintiffs also caution that the Eighth Circuit may disagree with this Court's analysis of *Kindred Nursing Centers Limited Partnership v. Clark*, 137 S. Ct. 1421 (2017), and *Epic Systems Corporation v. Lewis*, 138 S. Ct. 1612 (2018), which were decided after the district court's decision in *Burwell*.

The Court recognizes that it "is not required to predict its own reversal merely to find a sufficient showing of success on the merits," *St. Jude Med., Inc. v. Access Closure, Inc.*, 2012 WL 12919351, at *1 (W.D. Ark. Oct. 2, 2012), and that "certain district courts within the Eighth Circuit, have found that [the first] factor favors a stay when the moving party presents serious and novel questions which are fair ground for litigation." *Stuart v. State Farm Fire & Cas. Co.*, 2017 WL 5952872, at *2 (W.D. Ark., Jan. 25, 2017) (citing *Sweeney v. Bond*, 519 F. Supp. 124, 132 (E.D. Mo. 1981) and *Perrin v. Papa John's Int'l, Inc.*, 2014 WL 306250, at *2 (E.D. Mo. Jan. 28, 2014)). However, the Court does not believe that in this case, Plaintiffs have shown that they are likely to succeed on the merits of their appeal.

First, this Court disagrees with Plaintiffs' characterization of the *Burwell* court's decision as reaching an "opposite conclusion . . . on a very similar challenge to a materially indistinguishable rule." (Doc. 56, p. 4). First, the court in *Burwell* was considering a motion for preliminary injunction; while the standard required the court to consider the likelihood of the plaintiffs' success on the merits of their arguments as one factor among four to be balanced, it did not decide the merits of the case in the plaintiffs' favor. Though the court did observe that "plaintiffs have managed to bring forth a considerably greater amount of helpful authority" on the issue of whether the rule conflicted with the FAA, it nevertheless noted that "neither side cites a single decision which clearly establishes that it is likely to prevail in this case." 217 F. Supp. 3d at 931. The court further conceded that "[i]t is no doubt true that every decision relied upon by plaintiffs can be distinguished from this case in one or more important ways." *Id.* Ultimately, the court's conclusion in the plaintiffs' favor on this aspect of the merits in

*Burwell* has "as much to do with the state of the administrative record as it does with the bolus of authorities presented." *Id.* at 933. The district court anticipated that the administrative record might be found to be insufficient to support the rule that had been enacted, which prohibited the use of arbitration agreements entirely. This Court, in contrast, was asked to consider a more developed record after a second round of notice-and-comment rulemaking and to consider its sufficiency as the basis for a rule that places conditions on the use of arbitration but does not ban it outright. Thus, the Court does not agree with Plaintiffs' representation that two district courts, confronting basically the same set of facts, reached opposing conclusions on the issue of whether the Final Rule conflicts with the FAA. On the contrary, the Mississippi court confronted a more drastic rule supported by a less developed administrative record and reached a tentative conclusion that acknowledged ambiguity in the case law.

Nor does the Court agree with Plaintiffs that the *Burwell* court's passing mention of *National Federal of Independent Business v. Sebelius,* 567 U.S. 519 (2012) [hereinafter, *NFIB*], merits particular weight. It is true that the *Burwell* court tentatively reached a different conclusion than this Court when it suggested that treating the rule as an "incentive" likely would not allow a rule that "effectively amounts to a ban on pre-dispute nursing home arbitration contracts" to "survive FAA scrutiny." 217 F. Supp. 3d at 929–30. However, the *Burwell* court characterized the rule before it as "a *de facto* ban" on arbitration, which the Final Rule before this Court is not, and acknowledged that *NFIB* "has a number of distinguishing facts" from the case before it. 217 F. Supp. 3d at 929. More importantly, the *Burwell* court did not discuss or even mention its basis for imagining that *NFIB* would apply to the relationship between the federal government and a private

5

entity when the Supreme Court's rationale was entirely premised on maintaining the constitutional balance of power between the federal and state governments. This Court sees no reason to believe that the Eighth Circuit would extend *NFIB* to a context in which its rationale is inapplicable and find *NFIB* to overrule Circuit precedent holding that providers' participation in Medicare and Medicaid is voluntary. *See Minn. Ass'n of Health Care Facilities, Inc. v. Minn. Dep't of Pub. Health*, 742 F.2d 442, 446 (8th Cir. 1984). Despite their dismissal of the cases cited by this Court as "decades old," Plaintiffs have not directed the Court to any authority providing a reasoned basis to conclude that private entities are protected from coercion by the federal government on the same terms as states, nor does the Court consider it likely that the Eighth Circuit would reach such a conclusion.

Finally, the Court does not believe it is likely that the Eighth Circuit will give *Kindred Nursing* and *Epic Systems* the expansive interpretation that Plaintiffs urge. This Court analyzed the potential applicability of those cases at length and determined that they did not apply to the facts before the Court here, since the Final Rule does not provide a basis to invalidate any arbitration agreement in court nor restrict the use of arbitration agreements in the nursing home industry generally. *See generally* Doc. 44, pp. 11–16. Furthermore, the Supreme Court has repeatedly held that the federal government's decision not to fund a particular activity cannot be considered to infringe, interfere with, or penalize that right. *Id.* at pp. 16–17. Plaintiffs have not given this Court any reason to expect that the Eighth Circuit will expand *Kindred Nursing* and *Epic Systems* so far beyond their respective holdings, thereby creating unnecessary tension with the Supreme Court's Spending Power jurisprudence. In fact, the only other court to consider the merits

of a similar question, including the relevance of *Kindred Nursing* and *Epic Systems*, reached the same conclusion as this Court. *See Cal. Ass'n of Private Postsecondary Schs. v. Devos,* 2020 WL 516455, at *9 (D.D.C. Jan. 31, 2020). For these reasons, the Court finds that the first factor does not favor a stay pending appeal.

## B. Balance of Equities

Next the Court balances the relative harms to the Plaintiffs and the public of a stay. Plaintiffs argue that allowing enforcement of the Final Rule will cause them irreparable harm because they will be required to make economic expenditures to modify their procedures and train staff on those new procedures. Should Plaintiffs prevail on appeal, they will not be able to recover from CMS for any economic loss they suffer, and they will likely have lost signatures on arbitration agreements that they will never recover. While this would be irreparable harm under normal circumstances, Plaintiffs argue, it is especially so under the extraordinary circumstances of the COVID-19 pandemic. The nursing homes and their patients will be irreparably harmed if Plaintiffs have to divert resources from their pandemic response to come into compliance with the Final Rule. Nor is noncompliance an option for Plaintiffs because sanctions imposed by CMS would also cause irreparable harm.

In contrast, Plaintiffs argue, CMS and the public will suffer little or no harm if enforcement of the Final Rule is stayed as to Plaintiffs. CMS only recently began to regulate the use of arbitration agreements in nursing homes and agreed to further delays once it decided to promulgate the Rule. Therefore, Plaintiffs assert, an additional stay does not constitute substantial harm. Furthermore, Plaintiffs believe that the public

interest favors allowing nursing homes to remain focused on responding to the pandemic and not diverting resources to administrative compliance with the new regulations.

In response, the Government argues that it is not genuinely burdensome for Plaintiffs to come into compliance with the Final Rule, and Plaintiffs have not made an adequate showing of irreparable harm. The Government points out that where most providers had 60 days to come into compliance with the Final Rule, Plaintiffs have had nine months to prepare for the possibility that they would not prevail in their challenge to the Rule. Furthermore, the Government emphasizes that the public interests protected by the Final Rule are especially important during the pandemic and that nursing homes must be held accountable for their actions during this time. The Government urges that its willingness to accommodate the Plaintiffs and the Court by agreeing to a voluntary stay not be turned against it now that the Final Rule has been upheld. Ultimately, the Government asserts, the public interest is in enforcing a rule that has been found by the Court to be lawful.

To be considered "irreparable," the harm must be shown to be "certain, great, and of such imminence that there is a clear and present need for equitable relief." *Iowa Util. Bd. v. F.C.C.*, 109 F.3d 418, 425 (8th Cir. 1996). The court must determine not just what is "likely to occur" but "whether the harm will *in fact* occur." *Packard Elevator v. I.C.C.*, 782 F.2d 112, 115 (8th Cir. 1986). The Eighth Circuit instructs that "economic loss does not, in and of itself, constitute irreparable harm." *Iowa Util. Bd.*, 109 F.3d at 426 (quoting *Wis. Gas Co. v. F.E.R.C.*, 758 F.2d 669, 674 (8th Cir. 1985)). "The threat of unrecoverable economic loss, however, does qualify as irreparable harm." *Id.*

In weighing the harms here, the Court finds that a stay pending appeal is not warranted. The potential harm of losing "signatures on arbitration contracts," Doc. 50, p. 9, is neither certain nor imminent enough to constitute irreparable harm. Under the new regulations, a resident may still choose to enter into an arbitration agreement with the facility, and residents who decline the agreement may never bring suit against the facility in a dispute that otherwise would have been subject to arbitration. On the other hand, the Court does not doubt that there are economic costs associated with coming into compliance with the Final Rule and that those costs would not be recoverable from the agency if Plaintiffs prevailed on the merits of their appeal. However, the public's interest in the enforcement of the Final Rule is also significant. As the Court noted in its Memorandum Opinion and Order, the Final Rule serves to ensure that participants in Medicare and Medicaid can access government-funded long-term care without being required to give up other rights. It also facilitates holding nursing homes accountable for the standard of care they provide. The Court observes that every other nursing home participating in Medicare and Medicaid has already been subject to the Final Rule since September 2019 and has had to decide whether to undertake the changes necessary to come into compliance or risk penalties from CMS. Plaintiffs have not convinced the Court, as a general matter, that they should not be required to do the same now that the Court has held the Final Rule to be lawful.

In the alternative, however, the Court finds that granting a temporary stay of enforcement in light of the COVID-19 pandemic is warranted. The current crisis caused by the COVID-19 pandemic, which the Court recognizes has created extremely challenging circumstances for the entire country and for healthcare providers in particular,

justifies providing additional time for Plaintiffs to implement the new regulations. Nursing homes around the country are in a state of emergency as they race to limit the spread of the virus among their residents and staff. While the Court believes that under normal circumstances, Plaintiffs had a responsibility to prepare to come into compliance in a timely manner if they did not prevail in their challenge to the Final Rule, the Court recognizes that Plaintiffs could not have anticipated the drastic impact of a global pandemic. Therefore, the Court will grant an additional 60-day stay for the Plaintiffs to come into compliance with the regulation or seek further temporary relief from the Eighth Circuit.

## IV. CONCLUSION

For these reasons, Plaintiffs' Motion to Stay Pending Appeal is **GRANTED IN PART AND DENIED IN PART**. To the extent that Plaintiffs seek a stay pending the entirety of their appeal, the Motion is **DENIED**, but enforcement of the judgment in this matter will be **STAYED** for 60 days, up to and including July 6, 2020, in recognition of the impact of the COVID-19 pandemic.

IT IS SO ORDERED on this 30th day of April, 2020.

_____
TIMOTHY L. BROOKS
UNITED STATES DISTRICT JUDGE